1   **SCOTT C. CLARKSON, ESQ.  SBN 143271**
    **EVE A. MARSELLA, ESQ.  SBN 165797**
2   **CLARKSON, GORE & MARSELLA**
    **A PROFESSIONAL LAW CORPORATION**
3   **3424 Carson Street, Suite 350**
    **Torrance, California 90503**
4   **(310) 542-0111 Telephone**
    **(310) 214-7254 Facsimile**
5   Attorneys for 374 West 8th Street, LLC,
6   Debtor and Debtor in Possession

7   **JOHN S. CLIFFORD, ESQ. SBN 172263**
    **SMITH, CHAPMAN & CAMPBELL, APLC**
8   **1800 North Broadway, Suite 200 Santa Ana, CA 92706**
    **(714) 550-7720 Telephone**
9   **(714) 550-1251 Facsimile**
    Special Litigation Counsel for 374 West 8th Street, LLC,
10  Tony Ashai, Athar Ashai, and Emil Youssefzadeth

11

12                  UNITED STATES BANKRUPTCY COURT

13           CENTRAL DISTRICT OF CALIFORNIA, LOS ANGELES DIVISION

14  In re                              )  Case No. 2:10-bk-19554-ER
                                       )
15  374 WEST 8TH STREET, LLC,          )  Chapter 11
                                       )
16          Debtor and Debtor in Possession.  )  Adv. Case No. _:10-ap-_____-ER
                                       )
17                                     )
                                       )
18  _____)  **COMPLAINT FOR:**
                                       )
19  374 WEST 8TH STREET, LLC, TONY     )  **(1) DETERMINATION OF**
    ASHAI, ATHAR ASHAI, AND EMIL       )  **VALIDITY, PRIORITY AND EXTENT**
20  YOUSSEFZADEH,                      )  **OF LIEN;**
                                       )  **(2) DISALLOWANCE OF RECEIVER**
21          Plaintiffs,                )  **CLAIM;**
                                       )  **(3) DISALLOWANCE OF TURKAMAN**
22                                     )  **CLAIM;**
    v.                                 )  **(4) EQUITABLE**
23                                     )  **SUBORDINATION OF LIEN AND**
    ROBB EVANS & ASSOCIATES, LLC,      )  **CLAIMS;**
24  HALEH TURKAMAN, AND KAMRAN         )  **(5) BREACH OF FIDUCIARY DUTY;**
    GHADIMI,                           )  **(6) AIDING AND ABETTING BREACH**
25                                     )  **OF FIDUCIARY DUTY;**
                                       )  **(7) NEGLIGENCE;**
26          Defendants.                )  **(8) RECOVERY UNDER BOND;**
                                       )  **(9) RECOVERY UNDER BOND;**
27  _____)  **(10) BREACH OF CONTRACT;**
                                          **(11) FRAUD; AND**
28                                        **(12) CIVIL CONSPIRACY**

                                       1

374 West 8th Street, LLC, debtor and debtor in possession in this bankruptcy case and a plaintiff in this adversary proceeding (the "Debtor"), and Tony Ashai, Athar Ashai, and Emil Youssefzadeh (together with the Debtor, the "Plaintiffs"), respectfully represent and allege as follows:

### JURISDICTION AND VENUE

1.      This adversary proceeding arises in and relates to bankruptcy case number 2:10-bk-19554-ER, In re 374 West 8th Street, LLC, which is presently pending before the United States Bankruptcy Court for the Central District of California, Los Angeles Division (the "Bankruptcy Court" or the "Court").

2.      This complaint ("Complaint") initiates an adversary proceeding as contemplated by Rule 7001(1) of the Federal Rules of Bankruptcy Procedure. All of the Claims for Relief in the Complaint are either core proceedings as that term is defined in, without limitation, 28 U.S.C. §§ 157(b)(2)(A), (B), (C), (E), and (O) or are proceedings arising under title 11 or arising in or related to a case under title 11, as set forth in 28 U.S.C. §157(b)(1) and (b)(4).

3.      Pursuant to 28 U.S.C. §§ 1334(b), 157(a), General Order No. 266 entered by the US District Court for the Central District of California on October 9, 1984, and 157(b)(1), the above entitled court has jurisdiction over this adversary proceeding.

4.      On March 15, 2010 (the "Petition Date"), the Debtor filed its voluntary petition for relief under Chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Central District of California, Los Angeles Division, styled In re 374 West 8th Street, LLC, Bankruptcy Case No. 2:10-bk-19554-ER (the "Debtor's Chapter 11 Case"). As a consequence

of the commencement of the chapter 11 case, an estate (the "Estate"), comprised of all of the

Plaintiff's property and interests therein, was created.

5.    Pursuant to 28 U.S.C. § 1409(a), venue for the prosecution of this adversary

proceeding is proper in the above entitled District by virtue of the Debtor's pending Chapter 11

Case.

6.    The Debtor has standing to prosecute and enforce all claims asserted herein

belonging to the Estate pursuant to, without limitation, 11 U.S.C. §§ 541(a)(1), 541(a)(3), and

1107(a).

7.    This Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C.

§§ 157 and 1334.

**PARTIES**

8.    374 West 8th Street, LLC is a limited liability company organized and existing

under the laws of the State of California and is the debtor and debtor in possession in this case,

and at all time relevant hereto, was and is the owner of that certain real property commonly

know as 374 West 8th Street, San Pedro, California (the "Property"), which is property of the

Estate.

9.    Plaintiff Tony Ashai, f/k/a Aziz Ashai ("Tony Ashai") is an individual who

resides in Los Angeles County, California.

10.    Plaintiff Athar Ashai ("Athar Ashai") is an individual who resides in Los

Angeles County, California.

11.    Emil Youssefzadeh ("Youssefzadeh") is an individual who resides in Los

Angeles County, California. Tony Ashai, Athar Ashai, and Youssefzadeh are collectively

referred to as the "Individual Borrowers."

12.     Plaintiffs are informed and believe, and on that basis allege, that at all times mentioned herein, Defendant Kamran Ghadimi ("Ghadimi") is an individual who resides in Los Angeles County, California.

13.     Plaintiffs are informed and believe, and on that basis allege, that at all times mentioned herein, Defendant Haleh Turkaman (the "Current Lender") is an individual who resides in Los Angeles County, California.

14.     Plaintiff are informed and believe, and on that basis allege, that at all times mentioned herein, Defendant Robb Evans & Associates, LLC (the "Receiver") is a limited liability company organized and existing under the laws of the State of California, having a principal place of business in Sun Valley, California.

## ALLEGATIONS COMMON TO EACH CLAIM FOR RELIEF

15.     The Debtor purchased the Property commonly known as 374 West 8th Street, San Pedro, California 90731 in or about September 2005 for the purpose of constructing and developing a condominium complex.  The lot was approximately 10,019 square feet with eighteen condominium units to be constructed.

16.     In October 2006, the Debtor borrowed $4,241,000.00 from Vineyard Bank NA (hereinafter referred to as "Vineyard").  Vineyard allegedly recorded a first construction deed of trust on October 26, 2006 securing the obligation under a promissory note (the "Promissory Note") with the Los Angeles County Recorder's Office.  A modification of the deed of trust was allegedly recorded on April 29, 2008 increasing the obligation to $4,586,000.00.

17.     Vineyard filed an action for judicial foreclosure in or about March 5, 2009.  In the judicial foreclosure action, Vineyard claims a principal amount owing of $3,664,524.14 plus interest of $14,981.57.

18.    In or about March 2009, at the request of the plaintiff in the judicial foreclosure action, the Receiver was appointed to act as a receiver over the Property. In connection with the appointment, the Receiver was to file a bond in the sum of $10,000.00 to secure its faithful performance of its duties as receiver. In addition, such plaintiff in the judicial foreclosure action was ordered to post a bond in the amount of $1,500.00 pursuant to Code of Civ. Proc. Section 566(b), and a bond in the amount of $1,500.00 pursuant to Code of Civ. Proc. Section 529. A true and correct copy of the order appointing the Receiver as receiver in the judicial foreclosure action (hereinafter referred to as the "Order") is attached hereto as Exhibit A.

19.    The "powers and responsibilities" granted to the Receiver as receiver in the Order included:

- "To enter on gain access to, and take possession of the Subject Property..."

- "To preserve and protect the Subject Property and its improvements . . ."

- "To present to the court a plan to complete . . . construction. . ."

20.    In addition, the Order prohibited the Debtor from in any way interfering with the Receiver's duties as a receiver or doing anything with the Property. Essentially, the Property was placed completely in the care, custody, and control of the Receiver who had an affirmative duty under the court order to preserve and protect the Property.

21.    In or about July 17, 2009, California Bank & Trust (hereinafter referred to as "California Bank") acquired the deposits and loans of Vineyard from the FDIC.

22.    In or around July or August 2009 the Individual Borrowers and Ghadimi orally agreed that Ghadimi would purchase the Promissory Note from California Bank, and would then release the Debtor and the Individual Borrowers from their obligations thereunder.

23.    In order to facilitate Ghadimi's purchase of the Promissory Note, the Individual Borrowers provided specific confidential information to Ghadimi that enabled him to purchase the Promissory Note at a price far below face value.

24.    On information and belief, Ghadimi caused his wife, the Current Lender, to purchase the Promissory Note on his behalf.

25.    In or about October 2009, California Bank, as assignee of FDIC Insurance Corporation, sold the Promissory Note to the Current Lender for $1,310,000.00.

26.    On information and belief, the Current Lender substituted into the judicial foreclosure action as plaintiff in place of Vineyard or California Bank.

27.    Subsequent to Ghadimi's purchase of the Promissory Note through the Current Lender, Ghadimi, the Current Lender, the Debtor, and the Individual Borrowers agreed that in return for approximately $342,000.00 and various other valuable consideration, the Debtor and the Individual Borrowers would be relieved of all obligations under the Promissory Note.

28.    After the Current Lender, Ghadimi, the Debtor, and the Individual Borrowers reached a mutual agreement regarding the Promissory Note, Ghadimi and the Current Lender breached the agreement by demanding more money or, alternatively, demanding that the Individual Borrowers or their company remain as the general contractor on the Property, in contravention of the terms of the agreement.

29.    The Current Lender is listed in the Schedules filed by the Debtor as holding a claim in this case in the amount of $4,021,053.57 (the "Turkaman Claim"), based upon the Vineyard Loan, which was secured by a lien against the Property.

30.    The Receiver filed a declaration in support of the *Motion For (A) Relief From The Automatic Stay Under 11 U.S.C. § 362 (Real Property), And (B) Relief From Turnover*

*Under 11 U.S.C. § 543 By Prepetition Custodian Or Other Custodian By Haleh Turkaman*

[Docket No. 9] (the "MRAS"), which together with the MRAS constitute an informal proof of

claim (the "Receiver Claim").

31.    The Receiver failed to preserve and protect the Property as required by the

Order.  When The Receiver was appointed receiver, construction on the Property was

incomplete and the structure had no roof covering and no windows or doors, leaving the

existing construction exposed to the outdoor elements.  The Receiver did nothing to protect the

Property.  The basement and substructure were under water for an extended period.  Due to the

lack of protection, rain water was able to penetrate and enter the structure, causing damage to

the framing and jeopardizing the stability of the existing framing and foundation (the "Property

Damages").

32.    On information and belief, an application for an order approving a receiver's

plan to seal and protect the structure was not filed until in or about January 2010, approximately

ten (10) months after the Receiver had been appointed receiver and after substantial damage had

been caused to the existing structure.

33.    After the Receiver was appointed, the value of the Property substantially

declined due to the Property Damages.  As a result, the Property no longer fully secures the

Turkaman Claim.

34.    The Property is essential for an effective reorganization that is in prospect

because, among other things, the Debtor has obtained sufficient financing to complete the

condominiums on the Property and has valid causes of action against the Current Lender and

the Receiver with respect to the Property Damages.

35.    Bankruptcy Code Section 506(a) provides in relevant part:

"An allowed claim of a creditor secured by a lien on property in which the estate has an interest . . . is a secured claim to the extent of the value of such creditor's interest in the estate's interest in such property . . . and is an unsecured claim to the extent that the value of such creditor's interest . . . is less than the amount of such allowed claim.  Such value shall be determined in light of the purpose of the valuation and of the proposed disposition or use of such property, and in conjunction with any hearing on such disposition or use or on a plan affecting such creditor's interest."

11 U.S.C. 506(a).

36.    Based on expert estimates, the Property Damages may be in excess of $1,300,000.00.

37.    The construction of condominiums on the Property was approximately 50% complete prior to the appointment of the Receiver.

38.    Based on appraisals ("Appraisals") of the various types of condominiums that are being built on the Property in their current "as is" condition, assuming no Property Damages need to be remedied, the appraised value of the Property is $3,735,000, which equals the appraised values of the individual condominiums multiplied by the number of each type of Condominium on the Property.

39.    The Plaintiffs are informed and believe and based thereon allege that the Property's fair market value is less than $2,475,000, because the Property Damages are in excess of $1,300,000.  As a result, the Turkaman Claim is undersecured.  Accordingly, the Turkaman Claim is secured only to the extent of the fair market value of the Property (the "Fair Market Value"), and the amount of the Turkaman Claim that exceeds the Fair Market Value is unsecured and not entitled to any priority.

40.    On information and belief, the Receiver Claim includes both prepetition and postpetition costs and expenses ("expenses").

41.     However, the vast majority of the Receiver's expenses are not payable by the

Debtor's estate because all of the Receiver's prepetition expenses were obligations of the

Current Lender pursuant to the Order. *See Exhibit "A",* Order at p. 4.  Further, the only

expenses that might properly be reimburseable to the Receiver are its fees and costs incurred in

complying with Section 543 of the Bankruptcy Code (the "Turnover Expenses").  See 11 U.S.C.

543(c).

42.     The Current Lender succeeded to the rights and obligations of Vineyard under

the Order.  In the Order, the Superior Court ordered that the Receiver's expenses were to be "at

the expense of" the Current Lender.

43.     The Current Lender is obligated to pay the Receiver's expenses other than the

Turnover Expenses pursuant to the Order (the "Expenses that are Reimbursable by Lender").

The Receiver has no claim against the Debtor or its estate for the Expenses that are

Reimbursable by Lender pursuant to the Order because these are not "claims" that were owed

by the Debtor as of the Petition Date; they were owed by the Current Lender to the Receiver.

*See* 11 U.S.C. 502(b)(1) (A claim is not allowed to the extent that "such claim is unenforceable

against the debtor and property of the debtor . . . .").

## FIRST CLAIM FOR RELIEF

### (For Determination of Secured Portion of Turkaman Claim Pursuant to 11 U.S.C. § 506)

44.     Plaintiffs repeat, reallege and incorporate each and every allegation contained in

this Complaint as though fully set forth herein.

45.     As a result of the foregoing, Plaintiffs respectfully request that the Court

determine, for purposes of the Debtor's plan of reorganization and adequate protection, (a) that

the Turkaman Claim is secured only to the extent of the Fair Market Value, (b) that the amount

of the Turkaman Claim that exceeds the Fair Market Value is unsecured and not entitled to any

priority, and (c) that the lien against the Property has been satisfied to the extent that the amount

of the Turkaman Claim exceeds the Fair Market Value.

## SECOND CLAIM FOR RELIEF

### (For Disallowance of the Receiver Claim Pursuant to 11 U.S.C. § 502)

46.    Plaintiffs repeat, reallege and incorporate each and every allegation contained in this Complaint as though fully set forth herein.

47.    Pursuant to 11 U.S.C. 502(b)(1), a "claim is not allowed to the extent that 'such claim is unenforceable against the debtor and property of the debtor . . . .'"

48.    Pursuant to 11 U.S.C. § 502(d), the Court shall disallow any claim of any person or entity (a) from whom property is recoverable under the turnover and preferential setoff provisions of the Bankruptcy Code, or (b) that is a transferee of a transfer avoidable under the avoidance provisions of the Bankruptcy Code unless such entity or transferee has paid the amount, or turned over any such property, for which such entity or transferee is liable.

49.    Pursuant to § 502 of the Bankruptcy Code, the allowance or disallowance of claims must be determined by the Court after an objection is made.

50.    The Receiver has asserted the Receiver Claim.

51.    The Debtor objects to the Receiver Claim on two grounds, that it is excessive and that it is subject to setoff.

52.    First, the Debtor objects to the Receiver Claim to the extent that it asserts any amounts in excess of the Turnover Expenses because the Current Lender – not the Debtor – is obligated to pay to the Receiver the Expenses that are Reimbursable by Lender pursuant to the express terms of the Order.  Thus, the Receiver Claim for the Expenses that are Reimbursable

by Lender pursuant to the Order is not a "claim," which was owed by the Debtor as of the Petition Date to the Receiver.

53.    Second, the Debtor has claims against the Receiver, which are asserted herein, that would serve as a complete offset to the Receiver Claim.  Therefore, the Debtor also objects to the Receiver Claim in its entirety as of the Petition Date as a result of such setoff.

54.    In this Claim for Relief, for the reasons discussed above, the Debtor objects to the Receiver Claim in its entirety.  The Debtor requests that the Court sustain the objections set forth herein and enter judgment in favor of the Debtor and against the Receiver by disallowing the Receiver Claim in its entirety.

## THIRD CLAIM FOR RELIEF

### (For Disallowance of the Turkaman Claim)

55.    Plaintiffs repeat, reallege and incorporate each and every allegation contained in this Complaint as though fully set forth herein.

56.    If a debtor holds claims against a creditor, the debtor can set off its claims against the creditor's claims.

57.    The Current Lender has asserted the Turkaman Claim.

58.    The Debtor has claims against the Current Lender, which are asserted herein, that would serve as a complete offset to the Turkaman Claim.  Therefore, the Debtor objects to the Turkaman Claim in its entirety as a result of such setoff.

59.    The Debtor requests that the Court sustain the objections set forth herein and enter judgment in favor of the Debtor and against the Current Lender by disallowing the Turkaman Claim in its entirety.

## FOURTH CLAIM FOR RELIEF

### (For Equitable Subordination Pursuant to 11 U.S.C. § 510)

60.     Plaintiffs repeat, reallege and incorporate each and every allegation contained in this Complaint as though fully set forth herein.

61.     Pursuant to Section 510(c) of the Bankruptcy Code, a court may, under principles of equitable subordination, subordinate for purposes of distribution all or part of an allowed claim or interest, or order that any lien securing such a subordinated claim be transferred to the estate.

62.     Plaintiffs allege this claim against all Defendants that have asserted claims against the Debtor that may, directly or indirectly, benefit any Defendant.

63.     The Defendants engaged in inequitable conduct, including the conduct described in this Complaint, that has resulted in injury to the Estate and creditors of the Debtor or the conferring of an unfair advantage on the Defendants.  This conduct includes but is not limited to (1) claims against the Receiver for negligence, breach of fiduciary duty, and recovery of bonds based upon the significant damage done to the Property while in the Receiver's care; and (2) claims against the Current Lender and Ghadimi for fraud, breach of contract, and civil conspiracy based upon representations made by Ghadimi, the breach by Defendants of agreements between Ghadimi and the Debtor, and conspiracy between Ghadimi and the Current Lender.

64.     This inequitable conduct has resulted in harm to the Estate and to the Debtor's entire creditor body in that these actions damaged the Debtor's business significantly and general unsecured creditors are less likely to recover the full amounts due them because of the conduct of the Defendants.  Thus, allowing the Defendants to receive payment on their claims

(if any) against the Estate prior to payments of the claims of the mechanics lien holders or unsecured creditors would unjustly enrich the Defendants at the expense of the Mechanics Lienholders and unsecured creditors.

65.    Under principles of equitable subordination, to the extent that any scheduled claims or any formal or informal proofs of claim asserted against the Debtor by, on behalf of, or for the benefit of the Defendants are not disallowed by the Court as requested herein, such claims should be subordinated for purposes of distribution, pursuant to Sections 510(c)(1) and 105(a) of the Bankruptcy Code.

66.    The claims that have been filed (of which the Debtor is aware) on behalf of the Defendants are the Turkaman Claim and the Receiver Claim.  To the extent any other proof of claim has been or is filed on behalf of or for the benefit of any Defendant or any affiliate of a Defendant, those claims are included in this Claim for Relief. The Court should exercise the full extent of its equitable powers to ensure that claims, payments, or benefits, of whatever kind or nature, which are asserted or sought by the Defendants or their affiliates, directly or indirectly, against the Debtor are subordinated pursuant to Sections 510(c)(1) and 105(a) of the Bankruptcy Code.  No funds which would otherwise be paid to the mechanics lien holders or the general unsecured creditors should be paid to any of the Defendants or their affiliates.  In particular:

a. Direct claims by any of the Defendants or their affiliates against the Debtor
    should be subordinated.

b. Claims asserted by other entities (if any) against the Debtor, which claims are,
    in whole or in part, directly or indirectly, on behalf of or for the benefit of a Defendant
    or any of their affiliates, should be subordinated to that extent.

67.     Equitable subordination as requested herein is consistent with the provisions and purposes of the Bankruptcy Code.

68.     As a result of the foregoing, equity requires that the Turkaman Claim (if any) and the Receiver Claim (if any) be equitably subordinated to the payment of the claims of the mechanics lien holders and unsecured claims.

## FIFTH CLAIM FOR RELIEF

### (For Breach of Fiduciary Duty against Defendant Receiver)

69.     Plaintiffs incorporate herein by reference each and every paragraph and allegation of this Complaint as though fully set forth herein.

70.     A receiver is a court-appointed fiduciary that takes an oath to perform his or her duties faithfully and to obey the orders of the court.

71.     The Receiver owed a fiduciary duty to the Debtor.

72.     The Receiver breached its fiduciary duty by failing to faithfully perform its duties as receiver in accordance with the Order as described above.

73.     The Property has been damaged as a result of the Receiver's failure to preserve and protect the Property.

74.     As a proximate result of the Receiver's breach of its fiduciary duty, Plaintiffs have been damaged in an amount to be proven at trial.

## SIXTH CLAIM FOR RELIEF

### (For Aiding and Abetting Breach of Fiduciary Duty against Defendants Ghadimi and Turkaman)

75.     Plaintiffs incorporate herein by reference each and every paragraph and allegation of this Complaint as though fully set forth herein.

76.     As discussed herein, the Receiver owed a fiduciary duty to the Debtor.

77.     By virtue of the acts and omissions described in this Complaint, the Receiver breached its fiduciary duty by failing to faithfully perform its duties as receiver in accordance with the Order as described above.

78.     The Property has been damaged as a result of the Receiver's failure to preserve and protect the Property.

79.     By virtue of the acts and omissions described in this Complaint, Ghadimi and Turkaman (the "Aiding Defendants") knowingly gave substantial assistance to the Receiver in breaching his fiduciary duties to the Debtor for their own gain.

80.     As a proximate result of the Aiding Defendants' actions and omissions, which constitute aiding and abetting the Receiver's breach of its fiduciary duties, the Plaintiffs were injured and damaged in at least the following way: the Property Damages were incurred.

81.     The Plaintiffs have been injured by these actions and are entitled to damages. The foregoing acts were willful, malicious and taken with a conscious disregard for the rights and welfare of the Plaintiffs and were performed with the intent to damage or destroy the Debtor's business.

82.     As a proximate result of the Aiding Defendants breach of their fiduciary duty, Plaintiffs have been damaged in an amount to be proven at trial.

## SEVENTH CLAIM FOR RELIEF

### (For Negligence against all Defendants)

83.     Plaintiffs incorporate herein by reference each and every paragraph and allegation of this Complaint as though fully set forth herein.

84.     The Receiver had a duty to protect and preserve the Property in accordance with the Order.  As described above, the Receiver breached said duty by failing to take action to protect and preserve the Property.  As a result of the actions and/or inactions of the Receiver, the Property has been damaged.

85.     As a proximate result of the negligence of Defendants, Plaintiffs have been damaged in an amount to be proven at trial.

## EIGHTH CLAIM FOR RELIEF

### (For Recovery under Bond against Defendant Receiver)

86.     Plaintiffs incorporate herein by reference each and every paragraph and allegation of this Complaint as though fully set forth herein.

87.     It is believed that an entity engaged in the surety insurance business in the State of California (that is to be identified at a later time) is now, and at all times herein mentioned was, an entity engaged in the surety insurance business in the State of California.

88.     It is believed that the Receiver, and a surety, duly executed bonds, including a bond in the sum of $10,000.00 required by the Order to secure the faithful performance of the Receiver's duties as a receiver.

89.     The Receiver breached the conditions of the bond by failing to faithfully perform its duties as receiver and abide by the Order as described above.

90.     As a proximate result of the Receiver's breach, Plaintiffs have been damaged in an amount to be proven at trial.

## NINTH CLAIM FOR RELIEF

### (For Recovery under Bond against Defendant Receiver)

91.    Plaintiffs incorporate herein by reference each and every paragraph and allegation of this Complaint as though fully set forth herein.

92.    It is believed that an entity engaged in the surety insurance business in the State of California (that is to be identified at a later time) is now, and at all times herein mentioned was, an entity engaged in the surety insurance business in the State of California.

93.    It is believed that the Current Lender and/or her predecessor in interest, and a surety, duly executed bonds, including a bond in the amount of $1,500.00 and another bond in the amount of $1,500.00 as required by the Order.

94.    Defendants breached the conditions of the bonds as damage has been caused to the Property.

95.    As a proximate result of Defendants' breach, the Debtor has been damaged in an amount to be proven at trial.

## TENTH CLAIM FOR RELIEF

### (For Breach of Contract against Defendants Ghadimi and Turkaman)

96.    Plaintiffs incorporate herein by reference each and every paragraph and allegation of this Complaint as though fully set forth herein.

97.    As stated herein, the Debtor, the Individual Borrowers and Defendants Ghadimi and Turkaman agreed that the Debtor and the Individual Borrowers would be relieved of all of their obligations under the Promissory Note if they paid Ghadimi and Turkaman approximately $342,000.00 and gave various other valuable consideration.

98.     Before the Debtor and the Individual Borrowers could fulfill their obligations under this agreement, however, Ghadimi and Turkaman breached the agreement by Ghadimi stating that he and Turkaman would require more money from Plaintiffs, or alternatively would require Plaintiffs to remain as the general contractor on the Property until completion.

99.     Ghadimi and Turkaman's actions as herein alleged constituted a breach of the agreement between Plaintiffs and Defendants.

100.    As a direct and proximate result of Defendants' breach of the agreement, Plaintiffs were damaged in an amount to be proven at trial, but not less than $4,000,000.00.

## ELEVENTH CLAIM FOR RELIEF

### (For Fraud against Defendants Ghadimi and Turkaman)

101.    Plaintiffs incorporate herein by reference each and every paragraph and allegation of this Complaint as though fully set forth herein.

102.    Defendant Ghadimi intentionally misrepresented to Plaintiffs that Ghadimi would purchase the Promissory Note and then relieve Plaintiffs of their obligations thereunder.

103.    Ghadimi's misrepresentation was made with the intent that Plaintiffs would rely thereon in giving Ghadimi the confidential information that would enable Ghadimi to purchase the Promissory Note at far below face value.

104.    Ghadimi's misrepresentation was further made with the intent that Plaintiffs would rely thereon and cease all efforts to purchase the Promissory Note on their own behalf.

105.    Ghadimi's misrepresentation induced Plaintiffs to rely thereon as alleged herein, by giving Ghadimi confidential information and by ceasing their own efforts to procure the Promissory Note.

106.    Had Plaintiffs been aware that Ghadimi's misrepresentations were false, Plaintiffs would not have given Ghadimi the confidential information, and would not have ceased their efforts to procure the Promissory Note.

107.    Plaintiffs have suffered damages as a proximate result of the fraudulent conduct of Defendants as herein alleged in an amount to be proven at trial, but not less than $4,000,000.00.

108.    The aforementioned conduct of Defendants constitute intentional deceit and/or concealment of material facts done with the intention of depriving Plaintiffs of property and/or legal rights or otherwise causing injury and hardship in conscious disregard of Plaintiffs' rights, so as to justify an award of exemplary and punitive damages against Defendants.

## TWELFTH CLAIM FOR RELIEF

### (For Civil Conspiracy against Defendants Ghadimi and Turkaman)

109.    Plaintiffs incorporate herein by reference each and every paragraph and allegation of this Complaint as though fully set forth herein.

110.    On information and belief, Defendant Ghadimi and Turkaman formed and operated a conspiracy for the purpose of defrauding Plaintiffs as herein alleged, and alternatively for the purpose of breaching the agreement as herein alleged.

111.    By the operation of Defendants' conspiracy, in which Defendant Ghadimi made certain misrepresentations to Plaintiffs as herein alleged, and Turkaman bought the Promissory Note using confidential information fraudulently received from Plaintiff, Defendants defrauded Plaintiffs as herein alleged.

112.    Alternatively, by the operation of Defendants' conspiracy, in which Defendant Ghadimi made certain representations to Plaintiffs as herein alleged, and Turkaman bought the

Promissory Note using confidential information received from Plaintiffs in reliance on the parties' agreement, Defendants breached the agreement as herein alleged.

113.    As a direct and proximate result of Defendants' conduct as herein alleged, Plaintiffs have been damaged in an amount to be proven at trial, but not less than $4,000,000.00.

WHEREFORE, the Plaintiffs pray for judgment against the Defendants as follows:

1.    On the First Claim for Relief, for a determination of the amount of the Turkaman Claim, including the extent to which such claim is a secured claim, according to proof at trial;

2.    On the Second Claim for Relief, for disallowance of the Receiver Claim in its entirety;

3.    On the Third Claim for Relief, for disallowance of the Turkaman Claim in its entirety;

4.    On the Fourth Claim for Relief, for subordination of the Turkaman Claim (if any) and the Receiver Claim (if any) for purposes of distribution from the Estate to the mechanics lienholders and other unsecured claims;

5.    On the Fifth, Sixth, Seventh, Tenth, Eleventh, and Twelfth Claims for Relief, general and special damages in an amount to be proven at trial;

6.    On the Eighth and Ninth Claims for Relief, for recovery of the full amounts owed under the bonds;

7.    On the Eleventh Claim for Relief, for exemplary and punitive damages;

8.    For interest as allowed by law;

9.    For costs of suit incurred herein;

10.    For attorney fees as allowed by law; and

11.    For such other and further relief as the Court may deem just and proper.

Dated: June 8, 2010                    CLARKSON, GORE & MARSELLA, APLC


                                       By: _____
                                           Scott C. Clarkson, Esq.
                                           Eve A. Marsella, Esq.
                                           Attorneys for plaintiff 374 West 8th Street, LLC

                                       SMITH, CHAPMAN & CAMPBELL, APLC


                                       By: _____
                                           John S. Clifford, Esq.
                                           Special Litigation Counsel for 374 West 8th
                                           Street, LLC, Tony Ashai, Athar Ashai, and Emil
                                           Youssefzadeh

# EXHIBIT "A"

ORIGINAL

1  Steven N. Bloom (State Bar No. 089236)
   Bruce D. Poltrock (State Bar No. 162448)
2  Brian L. Bloom (State Bar No. 234083)
   FRANDZEL ROBINS BLOOM & CSATO, L.C.
3  6500 Wilshire Boulevard, 17th Floor
   Los Angeles, California 90048-4920
4  Telephone:   (323) 862-1000
   Facsimile:   (323) 651-2577
5
   Attorneys for Plaintiff, VINEYARD BANK,
6  N.A.
7
8
9
10

**FILED**
SUPERIOR COURT OF CALIFORNIA
COUNTY OF LOS ANGELES

MAR 26 2009

John A. Clarke, Executive Officer/Clerk
By_____Deputy
CONNIE L. HUDSON

## SUPERIOR COURT OF CALIFORNIA

## COUNTY OF LOS ANGELES, CENTRAL DISTRICT

| | |
|---|---|
| 11  VINEYARD BANK, N.A., a national banking<br>12  association, | CASE NO.   BC 409 044 |
| 13 | [Assigned to the Hon. Rolf M. Treu, Dept. 58] |
| 14              Plaintiff, | |
| 15  v. | **1.   ORDER FOR EX PARTE<br>APPOINTMENT OF RECEIVER,<br>AND TEMPORARY<br>RESTRAINING ORDER IN AID<br>OF THE RECEIVER; AND** |
| 16  374 WEST 8TH STREET, LLC, a California<br>17  limited liability company; AZIZ ASHAI aka<br>TONY ASHAI, an individual; ATHAR<br>18  ASHAI, an individual; EMIL<br>YOUSSEFZADEH, an individual; and DOES<br>19  1 through 100, inclusive, | |
| 20              Defendants. | **2.   ORDER TO SHOW CAUSE<br>REGARDING CONFIRMATION<br>OF EX PARTE APPOINTMENT<br>OF RECEIVER AND ISSUANCE<br>OF PRELIMINARY INJUNCTION<br>IN AID OF RECEIVER** |

May 6, 2009
DATE :   ~~March 26, 2009~~
TIME :   ~~8:30 a.m.~~   9:30a .m.
DEPT.:   86

CIT/CASE: BC409044 LEA/DEF#:
RECEIPT #: CCH4777282I4
DATE PAID: 03/26/09
PAYMENT: $40.00
RECEIVED: 03/26/09 10:32:03 AM

CHECK:
CASH:          40.00
CHANGE:
CARD:          0310

553973.1

1

66200-068

[PROPOSED] ORDER FOR APPOINTMENT OF RECEIVER, AND TEMPORARY RESTRAINING ORDER IN
AID OF THE RECEIVER, ETC.

TO:    ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

On March 26, 2009, in Department 86 of the above-entitled Court, the Application of Vineyard Bank, N.A. ("Bank" or "Plaintiff") for Appointment of Receiver and Preliminary Injunction in Aid of Receiver as to the real property commonly known as 374 West 8th Street, Los Angeles, California 90731 ("Subject Property"), came on for ex parte hearing.  Bruce D. Poltrock of Frandzel Robins Bloom & Csato appeared for the Bank; other appearances, if any, were as noted on the record.

### ORDER

Upon due and proper consideration of the verified complaint on file herein, together with the ex parte application for the appointment of a receiver, all of the supporting declarations, and points and authorities, and good cause appearing for the appointment of a receiver in this action:

**IT IS ORDERED** that Robb Evans & Associates, LLC ("Receiver"), be and is hereby appointed Receiver over 374 WEST 8TH STREET, LLC, a California limited liability company ("8th Street"), in this action, subject to the conditions that before entering upon its duties as a Receiver, it shall take the oath and file a bond with a surety thereon of satisfactory proof to the Court in the sum of $10,000.00 to secure faithful performance of its duties as Receiver.

**IT IS FURTHER ORDERED** that Plaintiff post a bond in the amount of $1,500.00 pursuant to Code of Civ. Proc. Section 566(b), and a bond in the amount of $1,500 pursuant to Code of Civ. Proc. Section 529.

**IT IS FURTHER ORDERED** that the Receiver shall have the following powers and responsibilities:

1.    To enter on, gain access to, and take possession of the Subject Property commonly known as 374 West 8th Street, Los Angeles, California 90731.  The definition of Subject Property also includes (a) all rents, leases, issues, royalties, and profits, and fixtures associated with, generated from, and/or affixed to the Subject Property; (b) all existing or subsequently erected or affixed buildings, improvements, easements, rights of way, appurtenances, water, water rights, ditch rights, stock in utilities, irrigation rights, royalty rights, mineral, oil, gas, geothermal, and similar rights, pertaining to the Subject Property;  (c) all intangible rights associated with any and

FRANDZEL ROBINS BLOOM & CSATO, L.C.
6500 WILSHIRE BOULEVARD, 17TH FLOOR
LOS ANGELES, CALIFORNIA 90048-4920
(323) 852-1000

1    all development entitlements affecting or pertaining to the Subject Property; (d) all offices from

2    which Defendant 8th Street operates; (e) all books, records, writings, documents, and electronic

3    media concerning the Subject Property, and the computers containing any such electronic media

4    ("Books and Records"); and (f) all of 8th Street's property.

5         2.    To preserve and protect the Subject Property and its improvements, in such a

6    manner as the Receiver, in the exercise of its reasonable judgment, shall determine is necessary (a)
     *TO PRESENT TO THE COURT A PLAN*

7    to complete the processing, repairing, conditioning, construction, entitling, and/or sale of the

8    Subject Property, including the individual lots and town homes thereon, and any work in progress,

9    re-mapping, changing the existing entitlements, re-entitling the Subject Property, correcting any

10   encroachments, providing information and documents to the County of Los Angeles concerning

11   the Subject Property and its development and entitlements and changes thereto, as is appropriate

12   for the orderly management, development, and control of the Subject Property; (b) to incur the
     *AT THE EXPENSE OF PLAINTIFF, THE*

13   expenses necessary to preserve and protect the receivership estate, including but not limited to the

14   Subject Property; ~~and (c) to do all things and to incur the risk and obligations ordinarily incurred~~

15   ~~by owners, managers, developers, and operators of similar businesses and properties, including~~

16   ~~hiring a real estate broker~~.  No risks or obligations so incurred shall be at the personal risks or

17   obligation of the Receiver, but shall be a risk or obligation of the receivership estate.

18        ~~3.    To demand, collect, and receive all monies, funds, and payments arising from the~~

19   ~~Subject Property, as a whole or as to individual lots or individual town homes as they are~~

20   ~~completed and sold.~~

21        4.    To take any and all steps necessary to receive, collect, and review all mail

22   addressed to 8th Street, including, but not limited to, mail addressed to each and every one of 8th

23   Street's employees, and any post office boxes held in the name of 8th Street, and at the Receiver's

24   discretion to instruct the U.S. Postmaster to re-route, hold, or release said mail to said

25   Receiver.  Mail reviewed by the Receiver in the performance of its duties will promptly be made

26   available for inspection to 8th Street after review by the Receiver.

27        5.    To take possession of all bank accounts of 8th Street and chattel paper and

28   instruments that pertain to the Subject Property, wherever located, and to receive possession of

FRANDZEL ROBINS BLOOM & CSATO, L.C.
6500 WILSHIRE BOULEVARD, 17TH FLOOR
LOS ANGELES, CALIFORNIA 90048-4920
(323) 852-1000

1    any money on deposit in said bank accounts. Receipt by the Receiver for said funds shall

2    discharge said bank from further responsibility for accounting to said account holder for funds for

3    which the Receiver shall give his receipt.

4        6.    To establish bank accounts at any bank the Receiver deems appropriate for the

5    deposit of monies and funds collected and received in connection with its administration of the

6    receivership estate, provided that all funds on deposit are insured by an agency of the United

7    States government unless such funds are held at Vineyard Bank.

8        7.    To execute and prepare all documents and perform all acts, either in the name of

9    8th Street, as is applicable, or in the Receiver's own name, which are necessary and incidental to

10    preserving, protecting, managing, developing, entitling, re-mapping, re-entitling, and controlling

11    the Subject Property. ~~Said acts explicitly include, but are not limited to, the right to borrow~~

12    additional amounts from the Bank pursuant to Receiver's Certificates, which the Receiver in its

13    sole discretion finds is necessary to preserve and complete the improvements to and the

14    entitlements concerning the Subject Property and further, to secure the amounts advanced by the

15    Bank pursuant to the Receiver's Certificates at an interest rate which would be at the same rate as

16    the existing obligation owed to the Bank by 8th Street and which would have the same or greater

17    priority as the Deed of Trust. The Receiver will not under any circumstances be personally liable

18    for any obligations incurred as a result of the exercise of this provision but instead, said obligation

19    shall be the sole obligation of the receivership estate. *PARAGRAPHS 5 THROUGH 18 WILL ONLY BE APPLICABLE AFTER THE RECEIVER PLAN IS APPROVED BY THE COURT.*

20        8.    To the extent that Plaintiff and the Defendants agree in writing, the Receiver is

21    authorized to close the sale of the Subject Property, or portions thereof, and to close sales to

22    prospective purchasers thereof, as found by 8th Street, or by the Receiver, through normal, arm's

23    length real escrows. In that regard and subject to the condition of this paragraph, the provisions of

24    Code of Civil Procedure § 568.5 are waived. All proceeds of any such sales shall be used by the

25    Receiver to pay (a) first, all normal and ordinary closing costs including without limitation to any

26    person to whom payment is required for there to be a valid transfer; (b) second, to establish a

27    reserve for payment of receivership fees, costs, and expense; (c) third, to the Bank until paid in

28    full; and (d) fourth, then as otherwise directed by the Court.

[PROPOSED] ORDER FOR APPOINTMENT OF RECEIVER, AND TEMPORARY RESTRAINING ORDER IN
AID OF THE RECEIVER, ETC.

FRANDZEL ROBINS BLOOM & CSATO, L.C.
6500 WILSHIRE BOULEVARD, 17TH FLOOR
LOS ANGELES, CALIFORNIA 90048-4920
(323) 852-1000

9. To compromise any and all claims which may encumber the Subject Property and to do all things and to incur the risks and obligations of similar real estate development enterprises and no risk or obligation incurred by the Receiver shall be at the personal risk or obligation of the Receiver, but shall be the risk or obligation of the receivership estate.

10. To hold monies coming into possession of the Receiver and not expended for any of the purposes herein authorized for the payment of 8th Street's obligations to the Bank sued upon in the complaint, subject to such orders as this Court may hereinafter issue as to the disposition thereof.

11. To employ servants, agents, employees, appraisers, guards, clerks, accountants, attorneys and management consultants to administer the receivership estate and to protect the Subject Property as the Receiver deems necessary; to purchase insurance, materials, supplies and services and to pay therefore at the usual rate and prices out of funds that shall come into his possession; to pay the reasonable value of said services out of the proceeds of the estate; and that no risk or obligation incurred by said Receiver shall be the personal risk or obligation of the Receiver, but shall be the risk or obligation of the receivership estate.

12. To evaluate the sufficiency of insurance coverages on the Subject Property. In that regard, 8th Street shall notify the Receiver upon the Receiver's taking possession of the Subject Property whether or not there is sufficient insurance coverage on the Subject Property. If sufficient insurance coverage does exist, 8th Street shall be responsible and is hereby ordered to name the Receiver as additional insured on the insurance policy(ies) for the period that the Receiver shall be in possession of the Subject Property. If there is insufficient insurance coverage, the Receiver shall have thirty (30) working days to procure said insurance on the Subject Property, provided the Receiver has funds available to do so, and during said period the Receiver shall not be personally responsible for claims arising which would have been covered by, or for the procurement of, insurance.

13. To prepare periodic interim statements reflecting the Receiver's fees and administrative costs and expenses incurred time to time, in the operation and administration of the receivership estate. Upon completion of an interim statement, and the mailing of said statement to

FRANDZEL ROBINS BLOOM & CSATO, L.C.
6500 WILSHIRE BOULEVARD, 17TH FLOOR
LOS ANGELES, CALIFORNIA 90048-4920
(323) 852-1000

1   the parties' respective attorneys of record or any other designated personal agent, the Receiver

2   shall pay from the estate funds, if any, the amount of said statement to the Receiver for its fees,

3   costs, and expenses.  Despite the periodic statement of Receiver's fees and administrative

4   expenses, such fees and expenses shall be submitted to the Court for its approval and

5   confirmation, in the form of either a noticed interim request for fees or a Receiver's final account

6   and report.

7       14.    To institute ancillary proceedings in this State or other states and countries as is

8   necessary to preserve and protect the receivership estate, and the Receiver may engage the

9   services of legal counsel, if necessary, after application to the Court *AND PERMISSION FROM*.  The Receiver may pay for

10   such services from the funds of the receivership estate.

11       15.    To file in this action, to the extent feasible within 30 days of his qualification

12   hereunder, an inventory of all property of which he has taken possession pursuant to this Order

13   and to create periodic additional accountings thereafter as circumstances warrant.

14       16.    The Receiver, or any party to this action, may from time to time, and on due notice

15   to all parties, make application to this Court for further orders instructing said Receiver.

16                **TEMPORARY RESTRAINING ORDER**

17       Each of the Defendants herein, including 8th Street, and all of its officers, members,

18   directors, agents, servants, and employees, and all persons or entities acting under or in concert

19   with them, or for them, are ordered to do the following and are restrained and enjoined from

20   engaging in, or performing, directly or indirectly, any or all of the following acts:

21       (a)    Interfering, hindering or molesting in any way whatsoever the Receiver in the

22   performance of the Receiver's duties herein described and in the performance of any duties

23   incident thereto;

24       (b)    Transferring, directly or indirectly, in any manner, any interest by sale, pledge,

25   assignment, and/or encumbrance of, or the grant of any security interest in, the Subject Property,

26   and/or in any proceeds and products thereof;

27   //

28   //

FRANDZEL ROBINS BLOOM & CSATO, L.C.
6500 WILSHIRE BOULEVARD, 17TH FLOOR
LOS ANGELES, CALIFORNIA 90048-4920
(323) 852-1000

[PROPOSED] ORDER FOR APPOINTMENT OF RECEIVER, AND TEMPORARY RESTRAINING ORDER IN
AID OF THE RECEIVER, ETC.

(c)    Moving the physical location of any construction materials, equipment, or other personal property of 8th Street from any location where it is presently located, or any proceeds and products thereof;

(d)    Transferring, concealing, destroying, defacing or altering any of 8th Street's Books and Records;

(e)    Causing any mail to be forwarded to any address other than the post office box or business address supplied by the Receiver; and

(f)    Failing or refusing to immediately turn over to the Receiver all monies, checks, funds, rents, lease payments, sale proceeds, royalties, or other proceeds relating to the Subject Property and/or its improvements, or failing to make available to the Receiver for inspection and copying all non-privileged Books and Records relating to the Subject Property.

**IT IS FURTHER ORDERED** that during the pendency of the receivership ordered herein, each of the defendants herein, including 8th Street, and all of its officers, members, principals, investors, ~~collectors,~~ stockholders, lessors, customers, ~~and junior lien holders~~ on the subject property and other persons seeking to establish or enforce any claim, right or interest against or on behalf of 8th Street, or any of its subsidiaries or affiliates, and all others acting for or on behalf of such persons, including attorneys, trustees, agents, ~~sheriffs, constables, marshals, and other officers and their deputies,~~ and their respective attorneys, agents, servants, and employees be and are hereby stayed from:

(a)    Commencing, prosecuting, continuing to enforce, or enforcing any suit or proceeding against 8th Street, except as such actions may be filed to toll any applicable statutes of limitations;

(b)    Commencing, prosecuting, continuing or entering into any suit or proceeding in the name or on behalf of 8th Street;

(c)    Accelerating the due date of any obligation or claimed obligation, enforcing any lien upon, or taking or attempting to take possession of, or retaining possession of, the Subject Property, or any property claimed by 8th Street, or attempting to foreclose, forfeit, alter, or terminate any of 8th Street's interests in the Subject Property, including, without limitation, the

FRANDZEL ROBINS BLOOM & CSATO, L.C.
6500 WILSHIRE BOULEVARD, 17TH FLOOR
LOS ANGELES, CALIFORNIA 90048-4920
(323) 852-1000

[PROPOSED] ORDER FOR APPOINTMENT OF RECEIVER, AND TEMPORARY RESTRAINING ORDER IN

1  establishment, granting, or perfection of any security interest, whether such acts are part of a

2  judicial proceeding or otherwise;

3        (d)    Using self-help or executing or issuing, or causing the execution or issuance of any

4  court attachment, subpoena, replevin, execution or other process for the purpose of impounding or

5  taking possession of or interfering with, or creating or enforcing a lien upon the Subject Property,

6  wheresoever located, or in the possession of 8th Street, or any of its subsidiaries or affiliates, or of

7  the Receiver appointed pursuant to this Order or any agent appointed by said Receiver; and

8        (e)    Doing any act or thing whatsoever to interfere with the Receiver taking control,

9  possession or management of the Subject Property or to in any way interfere with the Receiver, or

10  to harass or interfere with the duties of the Receiver, or to interfere in any manner with the

11  exclusive jurisdiction of this Court over the Subject Property. Provided however, nothing in this

12  paragraph shall prohibit any federal or state law enforcement or regulatory authority from

13  commencing or prosecuting an action against 8th Street.

14      **IT IS FURTHER ORDERED** that Defendants and 8th Street appear before this Court at

15  *8:30* a.m. on ~~April~~ *May* 6 , 2009 in Department 86, located at 111 N. Hill Street, Los Angeles,

16  California, then and there to show cause, if any, it has why the appointment of the Receiver should

17  not be confirmed and continued pendente lite and why such order should not be entered.

18      **<u>SERVICE AND BRIEFING SCHEDULE</u>**

19      **IT IS FURTHER ORDERED** that the Summons and Complaint, the Ex Parte

20  Application, Memorandum of Points and Authorities, this Order and all declarations and

21  supporting papers are to be served on Defendants no later than ~~March~~ *April* 3 , 2009, and the Proofs of

22  Services shall be filed in Department 86 no later than April 3 , 2009. Any opposition to the

23  confirmation of the Receiver is to be personally served by Defendants on Plaintiff's counsel and

24  filed in Department 86 no later than April 17 , 2009. A reply by Plaintiff is to be personally

25  //

26  //

27  //

28  //

FRANDZEL ROBINS BLOOM & CSATO, L.C.
6500 WILSHIRE BOULEVARD, 17TH FLOOR
LOS ANGELES, CALIFORNIA 90048-4920
(323) 852-1000

553973.1                     8                   66200-068

[PROPOSED] ORDER FOR APPOINTMENT OF RECEIVER, AND TEMPORARY RESTRAINING ORDER IN

1    served on Defendants or Defendants' counsel and filed in Department 86 no later than 4:00 p.m.

2    on April 2*, 2009.

3    DATED:    MAR 2 6 2009                    By: _David P Yaffe_____

4                                        JUDGE OF THE SUPERIOR COURT

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

FRANDZEL ROBINS BLOOM & CSATO, L.C.
6500 WILSHIRE BOULEVARD, 17TH FLOOR
LOS ANGELES, CALIFORNIA 90048-4920
(323) 852-1000

[PROPOSED] ORDER FOR APPOINTMENT OF RECEIVER, AND TEMPORARY RESTRAINING ORDER IN
AID OF THE RECEIVER, ETC.

B104 (FORM 104) (08/07)

| ADVERSARY PROCEEDING COVER SHEET<br>(Instructions on Reverse) | ADVERSARY PROCEEDING NUMBER<br>(Court Use Only) |
|---|---|

| PLAINTIFFS<br>374 W. 8th Street, LLC, Tony Ashai,<br>Athar Ashai and Emil Youssefzadeh | DEFENDANTS<br>Robb Evans & Associates, LLC, Haleh Turkaman,<br>and Kamran Ghadimi |
|---|---|
| ATTORNEYS (Firm Name, Address, and Telephone No.)<br>Scott C. Clarkson, Esq.<br>Clarkson, Gore & Marsella, APLC<br>3424 Carson Street, #350<br>Torrance, CA 90503<br>(310) 542-0111 | ATTORNEYS (If Known) |

| PARTY (Check One Box Only) | PARTY (Check One Box Only) |
|---|---|
| [x] Debtor   [ ] U.S. Trustee/Bankruptcy Admin<br>[ ] Creditor   [ ] Other<br>[ ] Trustee | [ ] Debtor   [ ] U.S. Trustee/Bankruptcy Admin<br>[x] Creditor   [x] Other<br>[ ] Trustee |

**CAUSE OF ACTION** (WRITE A BRIEF STATEMENT OF CAUSE OF ACTION, INCLUDING ALL U.S. STATUTES INVOLVED)

COMPLAINT FOR:
(1) DETERMINATION OF VALIDITY, PRIORITY AND EXTENT OF LIEN; (2) DISALLOWANCE OF RECEIVER CLAIM;(3) DISALLOWANCE OF TURKAMAN CLAIM; (4) EQUITABLE SUBORDINATION OF LIEN AND CLAIMS; (5) BREACH OF FIDUCIARY DUTY;(6) AIDING AND ABETTING BREACH OF FIDUCIARY DUTY; (7) NEGLIGENCE;(8) RECOVERY UNDER BOND; (9)RECOVERY UNDER BOND; (10)BREACH OF CONTRACT; (11) FRAUD; AND(12) CIVIL CONSPIRACY

## NATURE OF SUIT
(Number up to five (5) boxes starting with lead cause of action as 1, first alternative cause as 2, second alternative cause as 3, etc.)

**FRBP 7001(1) – Recovery of Money/Property**
[ ] 11-Recovery of money/property - §542 turnover of property
[ ] 12-Recovery of money/property - §547 preference
[ ] 13-Recovery of money/property - §548 fraudulent transfer
[ ] 14-Recovery of money/property - other

**FRBP 7001(2) – Validity, Priority or Extent of Lien**
[1] 21-Validity, priority or extent of lien or other interest in property

**FRBP 7001(3) – Approval of Sale of Property**
[ ] 31-Approval of sale of property of estate and of a co-owner – §363(h)

**FRBP 7001(4) – Objection/Revocation of Discharge**
[ ] 41-Objection / revocation of discharge - §727(c),(d),(e)

**FRBP 7001(5) – Revocation of Confirmation**
[ ] 51-Revocation of confirmation

**FRBP 7001(6) – Dischargeability**
[ ] 66-Dischargeability - §523(a)(1),(14),(14A) priority tax claims
[ ] 62-Dischargeability - §523(a)(2), false pretenses, false representation, actual fraud
[ ] 67-Dischargeability - §523(a)(4), fraud as fiduciary, embezzlement, larceny
**(continued next column)**

**FRBP 7001(6) – Dischargeability (continued)**
[ ] 61-Dischargeability - §523(a)(5), domestic support
[ ] 68-Dischargeability - §523(a)(6), willful and malicious injury
[ ] 63-Dischargeability - §523(a)(8), student loan
[ ] 64-Dischargeability - §523(a)(15), divorce or separation obligation
   (other than domestic support)
[ ] 65-Dischargeability - other

**FRBP 7001(7) – Injunctive Relief**
[ ] 71-Injunctive relief – imposition of stay
[ ] 72-Injunctive relief – other

**FRBP 7001(8) Subordination of Claim or Interest**
[2] 81-Subordination of claim or interest

**FRBP 7001(9) Declaratory Judgment**
[ ] 91-Declaratory judgment

**FRBP 7001(10) Determination of Removed Action**
[ ] 01-Determination of removed claim or cause

**Other**
[ ] SS-SIPA Case – 15 U.S.C. §§78aaa *et.seq.*
[3] 02-Other (e.g. other actions that would have been brought in state court if unrelated to bankruptcy case)

| [ ] Check if this case involves a substantive issue of state law | [ ] Check if this is asserted to be a class action under FRCP 23 |
|---|---|
| [ ] Check if a jury trial is demanded in complaint | Demand $ 4,000,000 |

Other Relief Sought  DISALLOWANCE OF RECEIVER CLAIM; DISALLOWANCE OF TURKAMAN CLAIM; BREACH OF FIDUCIARY DUTY; AIDING AND ABETTING BREACH OF FIDUCIARY DUTY; NEGLIGENCE; RECOVERY UNDER BOND; BREACH OF CONTRACT; FRAUD; AND CIVIL CONSPIRACY

B104

B104 (FORM 104) (08/07), Page 2

| BANKRUPTCY CASE IN WHICH THIS ADVERSARY PROCEEDING ARISES | | |
|---|---|---|
| NAME OF DEBTOR<br>374 W. 8TH STREET, LLC | BANKRUPTCY CASE NO.<br>2:10-BK-19554-ER | |
| DISTRICT IN WHICH CASE IS PENDING<br>CENTRAL | DIVISION OFFICE<br>Los Angeles | NAME OF JUDGE<br>Ernest M. Robles |

| RELATED ADVERSARY PROCEEDING (IF ANY) | | |
|---|---|---|
| PLAINTIFF | DEFENDANT | ADVERSARY<br>PROCEEDING NO. |
| DISTRICT IN WHICH ADVERSARY IS PENDING | DIVISION OFFICE | NAME OF JUDGE |

| SIGNATURE OF ATTORNEY (OR PLAINTIFF) | |
|---|---|
| *Scott C Clark* | |
| DATE<br>*June 9, 2010* | PRINT NAME OF ATTORNEY (OR PLAINTIFF)<br>Scott C. Clarkson, Esq. |

# INSTRUCTIONS

The filing of a bankruptcy case creates an "estate" under the jurisdiction of the bankruptcy court which consists of all of the property of the debtor, wherever that property is located. Because the bankruptcy estate is so extensive and the jurisdiction of the court so broad, there may be lawsuits over the property or property rights of the estate. There also may be lawsuits concerning the debtor's discharge. If such a lawsuit is filed in a bankruptcy court, it is called an adversary proceeding.

A party filing an adversary proceeding must also must complete and file Form 104, the Adversary Proceeding Cover Sheet, unless the party files the adversary proceeding electronically through the court's Case Management/Electronic Case Filing system (CM/ECF). (CM/ECF captures the information on Form 104 as part of the filing process.) When completed, the cover sheet summarizes basic information on the adversary proceeding. The clerk of court needs the information to process the adversary proceeding and prepare required statistical reports on court activity.

The cover sheet and the information contained on it do not replace or supplement the filing and service of pleadings or other papers as required by law, the Bankruptcy Rules, or the local rules of court. The cover sheet, which is largely self-explanatory, must be completed by the plaintiff's attorney (or by the plaintiff if the plaintiff is not represented by an attorney). A separate cover sheet must be submitted to the clerk for each complaint filed.

**Plaintiffs** and **Defendants.** Give the names of the plaintiffs and defendants exactly as they appear on the complaint.

**Attorneys.** Give the names and addresses of the attorneys, if known.

**Party.** Check the most appropriate box in the first column for the plaintiffs and the second column for the defendants.

**Demand.** Enter the dollar amount being demanded in the complaint.

**Signature.** This cover sheet must be signed by the attorney of record in the box on the second page of the form. If the plaintiff is represented by a law firm, a member of the firm must sign. If the plaintiff is pro se, that is, not represented by an attorney, the plaintiff must sign.

| Attorney or Party Name, Address, Telephone & FAX Numbers, and California State Bar Number | FOR COURT USE ONLY |
|---|---|
| Scott C. Clarkson, Esq. (sbn) 143271<br>Clarkson, Gore & Marsella, APLC<br>3424 Carson Street, #350<br>Torrance, CA 90503<br><br>(310) 542-0111<br>(310) 214-7254<br><br>*Attorney for Plaintiff* 374 8TH STREET, LLC | |

### UNITED STATES BANKRUPTCY COURT
### CENTRAL DISTRICT OF CALIFORNIA

| In re: 374 8TH STREET, LLC | CHAPTER 11 |
|---|---|
| | CASE NUMBER 2:10-BK-19554-ER |
| Debtor. | ADVERSARY NUMBER |
| 374 8TH STREET, LLC, Tony Ashai, Athar Ashai and Emil Youssefzadeh<br>vs.<br>Plaintiff(s),<br><br>ROBB EVANS & ASSOCIATES, LLC, HALEH TURKAMAN, AND KAMRAN GHADIMI<br>Defendant(s). | *(The Boxes and Blank Lines below are for the Court's Use Only) (Do Not Fill Them In)*<br><br>**SUMMONS AND NOTICE OF STATUS CONFERENCE** |

TO THE DEFENDANT: A Complaint has been filed by the Plaintiff against you. If you wish to defend yourself, you must file with the Court a written pleading, in duplicate, in response to the Complaint. You must also send a copy of your written response to the party shown in the upper left-hand corner of this page. Unless you have filed in duplicate and served a responsive pleading by _____ , the Court may enter a judgment by default against you for the relief demanded in the Complaint.

A Status Conference on the proceeding commenced by the Complaint has been set for:

| **Hearing Date:** | **Time:** | **Courtroom:** | **Floor:** |
|---|---|---|---|
| [x] **255 East Temple Street, Los Angeles** | | [ ] **411 West Fourth Street, Santa Ana** | |
| [ ] **21041 Burbank Boulevard, Woodland Hills** | | [ ] **1415 State Street, Santa Barbara** | |
| [ ] **3420 Twelfth Street, Riverside** | | | |

PLEASE TAKE NOTICE that if the trial of the proceeding is anticipated to take less than two (2) hours, the parties may stipulate to conduct the trial of the case on the date specified, instead of holding a Status Conference. Such a stipulation must be lodged with the Court at least two (2) Court days before the date set forth above and is subject to Court approval. The Court may continue the trial to another date if necessary to accommodate the anticipated length of the trial.

Date of Issuance: _____

**KATHLEEN J. CAMPBELL**
**Clerk of Court**

By: _____
         *Deputy Clerk*

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*February 2010 (COA-SA)*                                                          **F 7004-1**
                                                                                                    F70041